### IN MAY TERM, IN THE THIRTY-FIRST YEAR OF OUR INDE-PENDENCE.

---

*Mr. Justice* SPENCER *was absent during the whole of this term. on account of extreme sickness in his family.*

---

Tom *against* O. Goodrich, who is impleaded with Oliver Barber, surviving co-partners of O. Barber, G. W. Barber, A. Hosford, A. Hosford, jun. and O. Goodrich.

THIS was an action of *assumpsit.* The declaration contained three counts ; 1st. For money paid, laid out and expended by the plaintiff for the use of *O. Barber, O. Goodrich, A. Hosford. A. Hosford, jun.* and *G. W. Bar-*

One of five partners executed bonds to the United States for duties on goods imported on

account of the copartnership, and as their property, and T. became a surety in the bonds. The copartner who signed the bond died, and afterwards, the surety paid part of the bonds ; and after another of the partners died, the surety paid the residue of the bonds. T. brought his action against one of the surviving partners, who had resided in the state of Connecticut, and had been previously discharged from his debts by an insolvent act of that state, for money paid, laid out and expended, for the use of the copartners, &c. in the life-time of the deceased partners. In the declaration the implied promise was laid as made by all the partners, in the life-time of the deceased partners. It was held, that proof of the payment of money for the surviving partners, after the death of a copartner, would not support a declaration on an implied promise by all the partners ; that the claim of the United States against the copartnership became extinguished by the bond of the individual partner, who was alone responsible ; and that the surety, who had paid the money, had a right of action against the partner only who had signed the bond.

*ber*, in the life-time of the deceased partners. 2d. For money had and received by the same persons to the use of the plaintiff. 3d. For money lent and advanced. The defendant pleaded the general issue, and gave notice that he should offer in evidence that, being a citizen of *Connecticut*, and residing in that state, he was discharged by the general assembly of that state in October, 1799, from all the debts owing by him individually, and as one of the said copartnership.

The cause was tried at the *New-York sittings*, the 19th June, 1806, before Mr. Justice *Thompson*.

From the evidence produced at the trial, it appeared that the above-mentioned partners carried on business in *New-York*, as merchants, under the firm of *George W. Barber and Co.* from June, 1796, till some time in the year 1799. During that period, *Oliver Barber* and *George W. Barber* were the active partners, and conducted all the business in the city of *New-York*, where they resided. The other partners resided in *Connecticut*.

On the 8th July, the 2d August, and the 22d October, 1796, the said copartnership imported goods, the property of the copartnership, into the city of *New-York*, on which duties were payable to the *United States*, and which were regularly entered by *George W. Barber*, in the name of the copartnership, at the custom-house in *New-York*. On the 8th July, the 2d August, and the 22d October, 1796, *George W. Barber*, as principal, and the plaintiff as his surety, executed four several bonds to the *United States* for the payment of the duties on the goods so imported for *George W. Barber and Co.* *George W. Barber* died in January, 1799, and *A. Hosford*, the 7th April, 1804. The plaintiff, as surety, paid to the *United States*, in February, 1800, five hundred and one dollars and seventy cents, and in August, 1804, three thousand three hundred and thirty dollars and seventy-one cents, on account of the said bonds.

On the evidence of the facts, the defendant's counsel

NEW-YORK,     moved for a nonsuit, which was overruled by the judge,
May, 1807.    and the jury found a verdict for the plaintiff.

Tom              A motion was made on behalf of the defendants to set
v.            aside the verdict, and for a new trial.
Goodrich and
others.          Two questions were raised for the consideration of the
court. 1. Whether the *assumpsit* in the the declaration
ought not to have been laid as made by those partners
only who were living at the time the plaintiff paid the
money. 2. Whether the defendants are at all liable to
the plaintiff in this action?

*Hoffman*, for the defendant. The promise must be
proved as laid in the declaration. The plaintiff having
declared on a promise by all the partners, he must prove
*1 East, 52*   it.* Here the promise is stated to have been made by
*Sheriff* v.   five persons, two of whom were dead at the time. The
*Wilks.*
Opinion of     proof does not support the declaration.†
*Lawrence, J.*
† 6 Term 363      There could be no *assumpsit* in law, or implied pro-
*Spalding* v.  mise, until the plaintiff had actually paid the money.‡
*Mure. Holmes*
*& Drake* v. *De* The payment of money for the use of the surviving part-
*Camp*, vol. 1, ners would not raise an implied promise in the deceased
p. 34.
‡ 3 *Wilson* 13, partner.
14. *Chilton* v.
*Whiffin et al.*   Again, one partner cannot bind his copartner by deed,§
and 3 *Wilson*, and for the same, or a stronger reason, he cannot, by
262. 346.
§ 7 *Term*, 207. requesting another person to become surety in a bond,
*Harrison* v.  bind his copartner by such bond, so as to make him liable
*Rushforth.*
for the consequences.

If money be lent to one partner, expressly for the use
of the copartnership, and the lender takes a bond from
such partner for the amount, no recourse can afterwards
be had against the copartnership, on the implied promise.
The law of the *United States* prescribes a bond of a par-
ticular form, and agents and consignees are considered
as principals. Nothing is said as to rights against co-
partners. But in case of the insolvency of the principal,
the same preference is given to the surety who pays the
money, as before belonged to the *United States*.

*Radcliff* and *Harison*, contra. In general counts,

like those contained in the plaintiff's declaration, the precise time and place are not material. At the time the bond was excuted, there was an implied promise of the principal to indemnify the surety, and though the money was paid afterwards, yet the *assumpsit* must be considered as having relation back to the time of the giving of the bond. If so, the objection as to the death of two of the partners afterwards, but before the money was paid by the plaintiff, fails. Surviving partners may be charged generally in *indebitatus assumpsit*, without taking notice of the previous copartnership, or of the death of a co-partner.* All the survivors are named in the declaration, which is in the usual form in the case of surviving partners. It is true, that the situation of the parties might have been more accurately described; but the objection is merely formal. Where substantial justice may be done, why should the court send the parties to another trial, on a mere formal objection that might have been obviated by an amendment? The end of new trials is the attainment of justice. New trials have been granted on allowing the defendant to amend his plea, when the court are satisfied that justice has not been done.† In the present case the merits of the cause have been fairly tried, and the rights of the parties would not be varied by a new trial.

The acts of congress‡ make no provision for the binding of a copartnership in a bond, by the copartnership name or firm. A bond with sureties is required by the laws of the *United States*, for securing the payment of the duties, and the acting partner must, of course, execute the bond as principal. If he pay the money, he will have his remedy in equity against his copartners for their proportions, though not in the courts of common law. The bond is, virtually, a payment of the duties on the goods of the copartnership, who are thus benefited. Why may not a stranger who thus pays money for the use and benefit of a copartnership, have his action at law against

NEW-YORK, May, 1807.

Tom v. Goodrich and others.

* *Comber.* 383. 2 *Term.* 479. *Smith v. Barrow.*

†1 *Burrow,* 292. *Cowper.* 62, 63. 5 *Term,* 80. 83.

‡*Laws of U.S.* vol. 2. p. 78. vol. 4. p. 386

NEW-YORK.
May, 1807.

Tom
v.
Goodrich and
others.

* Cowper,
527.

such copartnership? In the case of *Taylor* v. *Mills &
Magnell*,* a party in interest was held liable, though he did
not sign the bond. The act of congress does not take
away the common law rights of sureties, but has super-
added privileges not before possessed, by giving to them all
the preference and priority which the government would
have against the principals, if bankrupts or insolvents.
This was intended to encourage merchants to become
sureties for each other. The surety is not obliged to
look beyond the principal named in the bond; but it will
greatly embarrass merchants if they cannot, when ne-
cessary for their indemnity, have recourse to the co-
partners for whose benefit the bond was given. A con-
signee who executes a bond to secure the duties on goods
consigned to him, would have a right of action against the
consignor for the money paid to his use, though the goods
should be afterwards destroyed by fire.

P. *Edwards*, in reply. The declaration is on a pro-
mise or contract between the parties named, and it must
be proved as it is laid. A promise, either express or im-
plied, by three persons, is different from a promise by five.
The cases already cited show that this is a fatal variance.
It is said that all the copartners were liable to the plain-
tiff at the time the bond was executed, and that the im-
plied promise must have relation back to that time. But
a promise to indemnify, or save another harmless, is dif-

†3 *Bulstrode*,
233. 5 *Co*. 24.
3 *Wilson*, 14.
262. 346.

ferent from a promise to pay money.* When the prin-
cipal fails to pay, a cause of action accrues to the surety,
on account of his liability, and is founded on the implied
promise to keep him harmless. But where the surety
pays the money, his right of action accrues only on pay-
ment of the money; he is not damnified until the money

‡ *Cowper*,527.
*Taylor* v.
*Mills & Mag-
nell*.

is paid.† The plaintiff cannot maintain an action against
all the copartners for money paid to their use, unless it
was actually paid for them, or his person has been taken
in execution for their debt. Two of the partners were
dead before the money was paid, so that it is impossible

to imply a promise to pay by five persons. But in truth, no promise by the *copartnership* to indemnify the plaintiff in this case can be raised by implication of law. Not a case can be found of such an implied promise to indemnify a surety, except by persons who have executed the bond. It has never been extended beyond the parties to the instrument. All prior contracts, promises, or liabilities, in regard to the duties, were merged in the bond by which *George W. Barber* became the debtor of the *United States.* By that bond all claims of the *United States* against the copartnership were extinguished. Suppose *Barber,* and the plaintiff as his surety, had given their bonds for all the debts due by the copartnership of *George W. Barber and Co.* those debts would be thereby extinguished; but *Barber* only would have a right of action against the copartnership. The plaintiff, who became surety for him at his request, would have no right against the copartnership for having paid their debts. The argument on the other side goes to maintain the doctrine, that when a surety pays the debt of the principal, he has a right of action against all persons who may, consequentially, be benefited by such payment. Such a payment may be a good consideration for an express promise by a person not a party to the instrument, but who is benefited by it; but it creates no implied promise. A third person cannot be thus made a debtor, *nolens volens,* without his knowledge or consent. Suppose *Barber* had given a counter-bond to indemnify the plaintiff, would not all implied promises have been merged in such bond?* The act of congress gives the surety who pays a bond a right to bring a suit on the bond in his own name, against the principal, and transfers to such surety all the rights, preferences and priorities belonging to the United States. The surety is thus secured by *bond,* and is in a better situation than if he took an indemnity from the principal at the time. Now, shall a person thus situated, resort for an indemnity to third

NEW-YORK,
May, 1807.

Tom
v.
Goodrich and
others.

*2 *Term,* 100,
*Toussaint* v.
*Martinnant.*

persons, not named, nor parties, on the ground of an implied contract?

In the case of *Taylor* v. *Mills & Magnell*, there was an affidavit of *Magnell*, who admitted that he was liable, and that he would have executed the bond, had he been in the country at the time. That case does not support the proposition contended for by the other side; but is an express authority to show that the plaintiff could have no cause of action until he had paid the money.

TOMPKINS, J. In this case two questions arise for our determination. 1. Whether the promise in the declaration ought to have been stated to have been made by those partners only who were living at the time the plaintiff paid the custom-house bond? 2d. Whether the defendants are at all liable to the plaintiff in this action?

There can be little doubt that no right of action for money paid, laid out, and expended, arises in favour of a surety, against the principal, until the former has actually paid the debt, or his body has been taken in execution upon a judgment therefor. (*Chilton* v. *Whiffin and Cromwell*, 3 *Wilson*, 13.)

Before the plaintiff paid the first custom-house bond, (at which time, if ever, his right of action against the partnership accrued) *George W. Barber* died; and previous to the second payment, as surety for the said *George W. Barber*, *Aaron Hosford* also died. The declaration is upon the *assumpsit* of all the partners living at the time the bonds were executed. In the case of *Spalding and another* v. *Muse and others*, (6 *Term Rep.* 363.) it was decided that in an action for money had and received, to the use of the plaintiffs, by three defendants, the former could not give evidence of money had and received to their use, by the three defendants and another person who had since died. This doctrine proceeded upon the undeniable principle, that to entitle himself to recover upon a promise, either express or implied, by the parties who are alleged in the declaration to have made it.

The same doctrine has been recognized in this court, in the case of *Holmes & Drake v. De Camp*, (1 *Johnson*, 36.) There can be no substantial reason for applying a different principle in the action, for money paid, laid out, and expended, or in a case where the promise proved is by three persons only, when the promise laid in the declaration is by those three persons and others whom they have survived. A plea in abatement is not necessary where the contract is stated to have been jointly made by more persons than are proved, upon the trial, to have assumed ; but the plaintiff, in such case must fail upon the general issue of *non assumpsit simul cum.*

As the objection to the plaintiff's right to retain the verdict upon the ground of a variance between the contract proved and the one stated in the declaration, might be obviated by an amendment, it becomes necessary to decide, whether the defendants are at all liable to the plaintiff, for the money paid by him as security for *George W. Barber*, one of the partners. In my opinion they are not. The law does not imply a promise by all the persons who may be *benefited* in consequence of payment by a surety, but only by the person whose debt is thereby discharged. In this case upon the acceptance, by the custom-house officer, of the bond of the plaintiff and *Barber*, the claim of the *United States*, for the duties secured thereby, became confined to that bond, and the debt, if any previously existed in favour of the *United States* against all the parties for those duties, was extinguished. The previous debt to the *United States* then became the debt of *Barber* only; and when the plaintiff became *his* surety, the promise of indemnity, and the promise upon the payment of the money, were implied against *Barber* only.

I am, therefore, of opinion, that the motion for a new trial ought to be granted; but that liberty be given to the plaintiff to amend his declaration, upon payment of the costs subsequent to the declaration.(*a*)

(*a*) Where one of two partners executes a bond for duties on goods

THOMPSON, J. was of the same opinion.

KENT, Ch. J. I am of the same opinion, and would only add, on the merits of the case, that as *George Barber* gave the bond to the *United States*, and became thereby responsible, to the exclusion of his partners, the *United States* could look only to him. The plaintiff executed the bond as his surety,. and cannot charge any other person as principal. There is no privity between the parties but what arises from the bond. It would be refining upon the doctrine of implied assumpsits, and going beyond every case, to consider the surety in a bond, as having by that act, a remedy at law against other persons, for whom the principal in the bond may have acted as trustee. *George Barber*, the principal here, was, as it is stated, a surety for the debt of his firm, and that debt might perhaps have arisen by their being sureties for other persons still behind them. We can only look to the principal and surety in the bond to the *United States*, and to the obligations resulting from that relation, because the money was paid by the plaintiff in discharge of that bond, and in exoneration of the personal representatives of *George Barber*, who, alone, were legally responsible for that debt. It may be, that *George Barber* had received a full indemnity from his partner when he gave the bond. We cannot, in this action, unravel the accounts between *George Barber* and his partners; and to push the implied *assumpsit* beyond the party to the bond, may lead to great difficulties, and produce injustice.

New trial granted.

THIS was an action of *ejectment,* for a lot of land in imported, with a surety, and the surety advances his co-obligor money, with which he pays the bond, he may maintain an action against both of the partners, for money lent, this being a partnership transaction; although had the surety himself taken up the bond, he could only have had an action against the partner who executed it. *Walden* v. *Sherburne*, 15 *John.* 409.