Wilds, J.
This case has been for a considerable time before-this court; the parties concerned in it may have expected an earlier decision; and to others, the time taken for consideration, may have appeared longer than any purposes of public justice could have required. I feel it due to the parties concerned ; I feel it due to this court, and to the public, to observe, that we have not, during the time we have had this case before us, forgotten our duty, or been regardless of the rights of the parties. We feel, at all times, and have, on this occasion, felt with more than ordinary sensibility, the. importance of the charge committed to us by our country. To guard, with stern inflexibility, the settled principles of the law ; to test the merits of every case by those long established and well fixed boundaries, we have always believed to be our duty ; we have always made it our aim. As to the merits of the present application, I believe there is not much difference of opinion, but on a point inseparably involved in the ca9e, one of vast importance to the landed interests of the country, there is not, by any means, the same unanimity. The several opinions which divide us appear to be established beyond any further prospect of removal. They have not yielded to the repeated and zealous interchange of sentiments. Much time has been allowed for reflection ; much for research, in *155 pursuing this course. We preferred hazarding the reproach of tar-diness, to a hasty decision, wherein we should proclaim, that a principle by which much property has been recovered, and much more possessed, was without any stable foundation ; by which circuit adjudications without number, would be set afloat, and a sort of legal anarchy substituted. The much desired result, however, of unanimity, even amongst a majority of the court, we have not been able to obtain; and we now pronounce our individual opinions to the1 public, leaving them to declare who is correct, and to provide, if deemed necessary, a remedy, which we do not possess.
I will premise the observations by which I support my opinion, with the remark, which applies to every other case, viz.: That I consider no decision as declaring the law of the land, which has not the sanction of a majority of the judiciary of the country, at the time it is pronounced. A majority of those, however, who are competent to hold this court, may decide on particular cases.
The land, the subject of this action, is a tract of 500 acres, granted to a certain James Beard, known by the name of Dorchee. The plaintiff) Theodore Gourdin, claims as a purchaser from the daughters, heiresses at law of a nephew of Mrs. Margaret M’Kel-vey, (before O’Neal.) He produced no conveyance from Beard, the grantee, to Mrs. M’Kelvey, under whom he claimed, but endeavored to shew a title in her by possession. To establish her possession, it was proved, as the case was reported, that eighty or ninety acres of the land, or perhaps more, had been under cultivation from the year 1755, to the death of Mrs. M’Kelvey, which happened in 1778, or 1779. The land was always called Mrs. M’Kelvey’s, even during her marriage with James M’Kelvey. A Mr. Couturier swore, that he had known Dorchee since 1769 ; that there were eighty or ninety acres of cleared land, and a considerably larger number of acres than eighty or ninety, under a post and rail fence, used for pasture. The plaintiff also gave in evidence, a deed, purporting to be a marriage settlement between the said Margaret, then O’Neal, and James M’Kelvey, in trust, “after the marriage, as well for the support of Charles O’Neal, her son by a former marriage, as for her separate maintenance during the joint lives of herself and the said Charles O’Neal, and the life of the survivor. At the decease of the survivor, in case the said Charles should .leave issue of his body, lawfully begotten, to said issue forever: but in case he should not, then to the issue of the body of the said Margaret, should there be any, forever.” Charles O’Neal died without issue, before his mother. She had issue by her marriage with James *156 M’Kelvey, two sons, James and Daniel. James died before her, without issue, and Daniel survived her, but died without issue also. Mrs. M’Kelvey had a brother, John, whose son, her nephew, lived with her. Tin’s nephew left four daughters, viz., Margaret, Sarah, Jenny, and Anna, from whom the plaintiff shewed conveyances. The defendant, James Theus, claims under a sheriff’s deed, founded on a judgment against James M’Kelvey, the husband of Margaret M’Kelvey, under whom the plaintiff claims. This statement, I believe, contains, in-substance, the principal facts of the case ; and from which result three points for investigation ; of which, however, only one is entitled to much consideration. 1. Whether, from the evidence reported, Margaret M’Kelvey possessed any and what title to the premises in contest ? 2. If any, in' what manner was it affected by the trust deed adduced ? 3. Whether the court should disturb the verdict ?
In discussing the first position, we have encountered all our difficulty : the proper construction to be put upon the act of limitations. We cannot agree as to the rights that act protects, or to those it confers : we do not agree as to the requisite qualifications which a party must possess, to be bonefitted by that act at all.
I cannot forbear remarking, that it appears to me very extraordinary, that an act, which has been in existence, and in constant operation, almost for nearly a century, which has been the theme of daily discussion by advocates of every grade, and of constant adjudication by judges of the greatest eminence, which forms the basis on which a large portion of the landed property of the country rests, should, at this day, afford a subject of difference of opinion as to the principles it establishes. It does, indeed, seem extraordinary, that during this long lapse of time, no one settled adjudication by the opinion of a majority of those selected to declare the law, has been adduced. Yet such is the fact. Neither the recollection of the members of this court, some of whom have been long on the bench, ,nor of the oldest members of the bar, have furnished such a case. The case of Smith v. Jones, decided here, to which I shall presently advert, is not such a case, Such a ease, then, I must suppose, does not exist. Had such a one been produced, let it have decided what it might, I should have acquiesced in silence, I feel, forcibly, the consequences of questioning fixed principles, or of causing a fluctuatjon in the rules of property. To avoid these consequences, I would almost subscribe to that sort of legal empiricism which holds that “ any rule is better than no rule." That five years adverse possession will give a good title to lands, we learn from the *157 act itself, and have heard hundreds of times pronounced from the bench. But what shall be the nature and extent of this possessory title ; whether it shall be restrained to absolute occupancy, or be allowed to take a wider range, and bounded only by the sound discretion of a jury ; what shall be the qualifications of the possessor ; whether his possession must be bottomed, at least, on a colorable right to the property, or will be equally'valid when commencing in the most bare-faced trespass, the public has yet to be informed ; and I sincerely regret the present occasion is not likely to furnish that information. I have said the case of Smith v. Jones did not settle the question. 1 have two notes of that case, taken by different members of the court. They agree in substance, except as to the opinion assigned to Mr. Justice Johnson. In the one he is stated as concurring w ith Judges Grimke, and Waties. In the other, as partly concurring with them, but as resting his opinion on a ground not taken by them. It is understood that Judge Johnson denies his having entirely concurred in the opinion ascribed to him. The principle, in either event, cannot be regarded as settled by a majority of the bench, and is, therefore, open for discussion. “ It was an action to try title to 112 acres of land on Goose Creek. The plaintiff claimed the land, and had a verdict, on proof, that a field of thirty or forty acres had been cleared • and cultivated for thirty years, by different persons, under whom be claimed, and who had also used the remainder of the tract for firewood, building, fencing, &e. It appeared also, that there was a plain road, which bounded the woodland claimed by the plaintiff, which road had always been considered by the proprietors of the adjoining lands, as the boundary on that side of the land claimed by the plaintiff Upon an appeal to this court, Judges Grimke, and Waties, were of opinion, that a title by possession must be proved by an actual occupation of the soil, in some way suitable to its nature and quality, and that the extent of it must be limited by the quantity so occupied, and as much more as might reasonably be presumed to be in use at the same lime, for firewood, fencing, buildings, and other wants, incidental to a settlement. The quantity to be so presumed, must be left to the sound discretion of a jury. But as such presumption is also founded on the principle of actual occupation, so it must not be carried further than that principle will warrant. Johnson, J., inclined to the same opinion, as to the extent of possession, but did not think it would be proper to establish so uncertain and precarious a rule, as that of leaving to the discretion of a jury the quantity of woodland necessary to the enjoyment of the *158 actua!ly possessed. From the circumstances of the case, however, and as the road on one side had been long regarded as a boundary, and as evidence had been given at the trial, that timber ^ad been occasionally taken as far as the road, by those who had the cultivated part in use, he was of opinion that sufficient evidence had been adduced of an actual occupation of th£ whole of the land claimed. Trezevant, and Brevard, Js,, were of opinion, that in all cases where a party claims under a grant irom the State, or under those who have such grant, and can shew a possession, either in himself, or those under whom he claims, of any part of the land so granted, sufficient under the act, to give a title, such possession of part shall be considered as possession of the whole contained within the boundaries described : otherwise, where he claims by possession alone, without such title, upon presumed evidence of title, there he shall be confined to the land he shall actually occupy. In the case before them they thought there was sufficient evidence of a visible notorious boundary, so as to give notice to all concerned of the extent of the plaintiff's claim.” I have given the report of this case more in detail, from its being the only one which bears on that under consideration; and irom the politeness of two of my brethren, I have been able to make use of the very words, nearly, in which the different opinions were deli, vered.
It will not, I hope, be imputed to vanity, when I declare that I cannot entirely subscribe to either of these opinions. Both appear to be partly correct; neither entirely so. I entirely cottc'ur with those of my brethren who fix the basis of the title, by possession, on an actual occupation of the soil. This is a principle definite and intelligible. It establishes a right capable of exact specification ; of being located with mathematical precision. The same scale which graduates the extent of the plaintiff’s grant will afford a correct rule by which to ascertain the defendant’s possession. The same research which establishes the correct stations of the surrounding tract, might afford the requisite testimony of the extent of five years possession. Here, had the opinion stopped, it were, in my opinion correct. This rule would give to the landholder sufficient inducement to guard his rights, the great object of the act. It would give to the possessor, ■ rights sufficiently ample, when it is considered he is a mere trespasser, and receives this bounty as the price of his iniquity, in robbing his neighbor of his property. For it will be recollected, that the title by possession is founded in wrong, not in right. It continues to bo a tort until tho *159 last moment of the five years; severely punishable by the courts of law ; when in the twinkling of an eye, by a kind of legislative magic, it is transformed into a pure, a vested right, entitled to the full protection of that power,/which, a moment before, would have crushed it. But the opinion stops not here. It not only gives the possessor the land he has actually seized, but as much more as might reasonably be presumed to be in use at the same time, for firewood, fencing, «fee. And the quantity necessary for these purposes, is to be left to the sound discretion of a jury! Here the evidence of facts is yielded to presumption, and for the irresistable force of demonstration, is substituted the wild, capricious discretion of a jury. It does pretend, to be sure, to restrain this discretion within some bounds ; but I would ask, how is it to be done ? What powers of coercion, or prevention, are left? By what rules or principles is it to be exercised ? How is this additional soil, which a jury is1'allowed to presume to have been occupied, as appurtenant to fiiat actually possessed, to be located ? It is not required that it should he identified by boundaries, capable of positive proof, and exact delineation. It regards not courses, or distances, but rests upon a presumption which has no legal foundation. This presump, lion is to be regulated by a sound discretion. The quantity presumed must depend upon the length of possession ; and the case of Smith v. Jone.s, upon a possession of thirty years, has established about three acres uncultivated, for one actually occupied, as a reasonable rule. From what side of land actually occupied, is this appendage to be laid off? Is the original figure of this chimerical polygon to be preserved, and the lands presumed to be measured out at equal distances from its many sides ? This would be a task, at least equal to the sound discretion of most of our juries, and above the skill of ordinary surveyors. In some cases it would be totally impracticable. Suppose, at one corner of the land, actually enclosed, there is sufficient timber, &c., for the purposes mentioned in the opinion ? Suppose the lands of the possessor himself, surrounded on all sides but one, the land occupied ? Suppose it were in the centre of a very large field, when the quantity established in this case would not even reach the woodlands ? Suppose it were surrounded on all sides but one, by seas, by marshes, or old fields ; how would the original figure be preserved ? or what other substituted in its place? Suppose it were surrounded by ditches, walls, or other means, so as to preclude the presumption of timber being necessary ? 1 have myself witnessed the difficulty of reducing the rule laid down in this case to practice. More form *160 an<^ solemnity is requisite in conveying lends than in a transfer of personal property, or to establish any right sounding in damages. To give a man ten acres, correctly described, and located, with-lhree or four acres for every one so described, gives a very indefinite idea of the lands transferred. It is not establishing them with the precision of which the thing is capable. This doctrine is too vague and uncertain to be left to the unskilful management of a jury. It deprives them of those well known land-marks, and boundaries, within which they could discreetly exercise their powers, and drives them into an ocean of uncertainties, without a compass to direct their course, or a chart to warn them of the surrounding dangers. When a plaintiff, whose claim is bottomed on the best of all titles, a grant from the State, has occasion to institute an action, what is he allowed to recover? The exact quantity contained within the limits of his grant. Nothing is allowed for length of possession ; nothing to presumption. What then, let me inquire, are the peculiar merits of the title by possession, which entitles it to such extraordinary favor? A moment’s examination of the act of limitations will, at once, evince. The legislators of that day cast an eye of parental solicitude over the situation of the country. They discovered amidst the confusion, inadvertence, and ignorance, incidental to new settlements, the landed property of this country was in a very precarious situation. They observed their constituents to'have been more industrious in the acquisition of lands, than regardful of the manner in which they were acquired; justly paying a valuable consideration, without attending to the formalities established by the common law in the transfer of real estates. They had just declared that common law in force, and were well aware of its operation. They saw the evil, and provided the remedy. The title to the act states its object to be “ the settling of the titles of the inhabitants to their possessions in their estates.” The act enumerates the several kinds of conveyance by which lands had been transferred ; some of them such as would give no title by the laws they had just enacted. In this state of things, takes a retrospect, legalizes all those defective conveyances where they had been accompanied by seven years possession ; quiets, as it professes its object to be, all the inhabitants, in that situation ; and provides for the future in the second clause of the act, a sufficient stimulus to induce every landholder to guard his interests from intrusion, by giving to any stranger, who should occupy for five years, any part of his lands, without permission, the lands so occupied ; protecting, however, the rights of those who, from imbecility, infancy, or ab *161 sence, were incapable of protecting themselves. All the members of the first clause of the act, are in the past time, and have always been considered retrospective. The second clause, under which the present question arises, is in the following words : “ If any person, or persons, to whom any right or title to lands, tenements, or hereditaments, within this province, shall hereafter descend, or come, do not prosecute the same within five years after such right or title accrued, he, her, or they, and all those claiming under him, her, or them, shall be forever barred to recover the same,” with the exceptions in favor of infants. And what the nature of this claim shall be, the third clause fully explains. It must be by action at law, against some person in possession of the same. This examination of the act, shews the nature of. his title, who claims by possession alone. A mere violator of his neighbor’s right; a sta-iutory hireling, whose reward is the quantity of his neighbor’s land he can keep against his will for five years. The iniquity of the deed merges in the policy of causing diligence in the owners of lands, to guard their rights against trespassers. If no trespasser violates his right of possession, it is in no danger from any want of actual posses, sion by himself, for any length oí time, as in favor of a right, the law always presumes him in possession who has the right to possess, except where the contrary is made to appear. And the.evident extent of the trespasser’s right is bounded by his actual, continued, adverse five years possession, because such actual possession by him precludes the presumption of the legal possession of the owner. This adverse possession must be of that exclusive positive character, which evidences to the world the intention of the occupant, and seems to hold in defiance the better title of the rightful owner. It must be founded on actual occupancy of the soil, in,some way, as the opinion expresses, “ suitable to its nature and quality and this actual occupancy must be continued for five years, and is capable of precise location and positive proof. If this view of the act be correct, the title of the possessor is conceived in sin, and brought forth in iniquity. It requires the omnipotence of legislation to wash away its impurities; and after all its shape remains contracted and deformed, and there is no ground to presume it more comely or capacious, than it appears to the naked eye to be. It is said that it is impossible to imagine a case of actual possession, unaccompanied with this sort of necessary occupancy of the adjoining lands. This may be so. But if the fact must so necessarily happen, why can it not be positively proved ? A mere occasional trespass, such as going to a particular part of the land to cut a necessary piece of timber, and, *162 perhaps, never returning to the same spot for five years, is not thaS exclusive kind of occupancy which gives title. It raises no barrier against the owner’s claim. It is amere furtive intrusion, and affords no basis to preserve a right. Everjr clause of the act of limitations is made for the protection of rights, not of wrongs. The law always presumes innocence, not guilt. How, then, could a jury presume a trespass three or four times as extensive as it is-proved to have been 1 Why, if presumptions are to govern, may they not presume that the rightful owner had, as he'ought to have had, the actual possession of all not included within the trespasser’s fences, ditches, or walls ? The presumption would ’be more just and reasonable, and in my opinion would have something more like a legal foundation. The title by possession, like that by prescription, should be construed strictly. . This would answer the purposes of the act, and give to the possessor sufficient wages for his agency. For these reasons, and others which I have not time to enumerate, and those who hear me, I apprehend, have not patience to attend to, I cannot subscribe to the full opinion of Judges Grimke, and Waties, in the case of Smith v. Jcines, which, I understand, is adopted by Mr. Justice Bax.
I entirely concur with my brothers Trezevaht, and Brevard, that wherever aparty claims under a grant, or deed, and can shew such a possession of any land, contained within such grant, or deed, as the act requires, there possession of part is possession of the whole. This, 1 regard as an established principle of the common law, unaltered by either the letter or spirit of the act of. limitations. It seems to result from the very nature of things. When the State, or an individual, convey its title to land to another, the one relinquishes all right, and the other acquires sole dominion to all the lands included within the fixed limits of such a grant. He knows the boundaries which limit his power, and from the notoriety of the transfer, the world also know them ; although not endued with omnipresence, yet,-if he be on any part of his established territory, his eye may be supposed capable of glancing over the whole. Being in actual possession of a part, the law extends it to the whole, and makes his possession commensurate with his right. If a trespasser intrudes on a corner of it, he can acquire no title from possession ; because, both being in possession, he has the possession who has the right. He is regarded as a mere permissive occupant; one whom the rightful possessor may eject when he pleases, but is nof precluded if he do not so at alh Any other construetion would despoil a title by deed of its principal privileges. A man *163 cannot be every where, and actually occupy the whole of his rights. But whilst I entirely subscribe to the rule, perhaps carry it even farther than they do, I differ entirely in its application. . This con-struetion I attach to legal, valid grants and deeds, and those only. I can form no idea of what is called a colorable title. A deed must be valid, and capable of transferring a right, or it is a mere nullity. After an individual, or the State, has granted away all its rights to a piece of land, or auy thing else, there is nothing left for a second grant to operate upon. It may serve to shew the liberality of the grantee, but it also shews an exercise of his liberality at the expense of the first object o.f his generosity. A second grant, or -deed, in ordinary cases, can convey no right, and must be regarded as mere nullities. A. colorable title is no title. It is urged, that although a second grant cannot convey the freehold, that being gone with the first, yet it, at least, shews the extent of the party’s claim. It fixes up certain boundaries; and proclaims to the world thus far the party claims. I agree it does all this. I admit it is one act of occupancy, which shews the party’s intention to possess, but it must be continued for five years before it gives a title. We entirely agree, except as to the efficacy of a second grant. By them it is contended, without such colorable title, the act of limitations can never give a right, and with it a right commensurate with the extent of such title. By me, that such title gives no right at all; the title by possession being, if any thing, better without it than with it, and confined to actual occupancy.
I entirely concurred with a majority of the court, in the case of Mazyck v. Wight, decided at Columbia, which will be noticed by my brother Biievaed. That case did not decide the extent of possession, but only that several portions of possession by different persons, less than that required by the act of limitations, could not be united. I am aware that a very able lawyer, (Mr. Haywood,) of a sister State, gives the same construction with my last named brethren, to the act of limitations of that State; not much unlike our own. I have read his argument with pleasure, and weighed it with deliberation. I cannot concur in his reasoning. There are, however, in the act of North Carolina, words and expressions not used in our act, and on those expressions, I observe, the gentleman alluded to, very much relies, in the construction he gives that act. In the case before the court, I think the plaintiff has shewed, by possession, no legal right in Mrs. M’Kelvey, further than to eighty, or ninety, or one hundred acres, actually cultivated, *164 an<* same enclosed as a pasture ; — about two hundred acres of the five hundred acres contained in Beard’s grant.
I will now very briefly consider the operation of the deed adduced i*1 evidence. I know not for what purpose it was introduced» unless to obviate the objection, that this possession was of M’Kel-vey, not of his wife. The trust deed shews that one half of the lands in question were conveyed in trust, to William M’Kelvey, for the uses mentioned in the deed, leaving in Mrs. M’Kelvey the remaining 250 acres. It is said, however, that there are no words of inheritance in the deed, and consequently those claiming under it take only a life estate. To this, it-is answered, that although this deed, if disconnected with- the trust, would carry only a life estate to the trustee ; yet being coupled with’ a trust, which to be fulfilled, would require in the trustee a fee simple, it should be construed as giving him a fee simple in the premises. I believe a court of equity would give the deed this construction, but the less liberal rules of a court of law will only seek in the deed itself, and not in the uses for which it was made, for an exposition of the estate which it creates. The deed in question conveys one half of Dorchee to William M’Kelvey, his executors, administrators, and assigns. In legal construction, I am of opinion, Daniel M’Kelvey, son of Margaret, who survived her, and was her heir at law, took an estate for life only under this deed, and the reversion by descent, and that his heirs are to be sought in the maternal line whence the estate was acquired, and under his heirs.the plaintiff claims. If, then, the plaintiff has shewn a title in Mrs. M’Kel-vey, to the whole of the lands in question, I think he has deduced from her to himself the full benefit of that title.
It is argued in this case, that although the act of limitations will not give the plaintiff in this action, or those under whom he claims, a good title to all the lands he has recovered, yet, from the great antiquity of that possession, the jury were authorized to presume a grant, and on that ground the verdict is maintainable, particularly as there were deeds of very ancient date in the case, which strengthened the presumption. On this ground, and this alone, I think the verdict maintainable ; and in even concurring in this fee.' ble basis, which alone supports the plaintiff’s right, I cannot lose sight of the less stable claim of the defendant, who has certainly shewn no legal right at all. It is not forgotten, that in those actions, the plaintiff’s title is the only subject of inquiry. But when this court is called on for their interference of their extraordinary *165 powers, it is not a departure from duty to see what good purpose would be answered by their exercise of it.
These are my sentiments on this important question. In them, I believe,T find no support from the bench, perhaps as little from the bar. I ought, I suppose, to believe myself wrong. I again declare I feel not the force of any puerile vanity, in wishing to differ from the eminent characters who have, and do still hold, a contrary doctrine. On the contrary, I venerate the talents which have adorned, and do still adorn, this court; but in the discharge of the sacred trust confided to me by my country, to resort to the feeble lights which Providence has given me for my direction ; to form my opinion honestly, if not correctly, and to express them, when formed, with independence.
BRevaRd, J.
From the evidence reported to have been given at the trial of this cause, the following facts and circumstances áre those which appear to me material, and necessary to be taken into consideration, in the determination of the motion now before us. 1. The action is trespass to try the title to 500 acres of land; and the verdict has been rendered in favor of the plaintiff. 2. The land in question was originally granted to one James Beard. 3. A cer. tain Margaret M’Kelvey, about the year 1753, was generally reputed to be the owner of the land. She lived upon it, claiming it as as her’s, for about fifteen years, and cultivated about eighty acres of it, and died in possession of it, in the year 1778 or 1779. 4. About the year 1753, Margaret M’Kelvey, then Margaret O’Neal, intermarried with James M’Kelvey; but, nevertheless, she was always considered as the owner of the land, and not her husband. 5. Prior to her marriage, and with a view to that event, the land was conveyed by Margaret M’Kelvey, by a deed of marriage contract, to one William M’Kelvey, in trust, for the use of the said Margaret, and her children, as well of her former marriage with O’Neal, as of the intended marriage. 6. Pursuant to this marriage contract, provided the deed had been so drawn as to have conveyed the fee-simple of the land to the trustee, and his heirs, the equitable estate would -have vested in Daniel M’Kelvey, the surviving son of Margaret, who died several years ago, and whose heir at law, by the father’s side, is Col. Robert M’Kelvey, under whom the defendant claims. 7. After the death of Margaret M'Kelvey, her son Daniel claimed and held possession of the land ; and no adverse claim was ever set up, or known to exist, in the life time of Margaret M’Kelvey, nor until long after her death. 8. The mar *166 riage settlement deed conveys the land to the trustee, William M’Kelvey, his executors, administrators, and assigns, hut not to his heirs. 9. The plaintiff proved a title from the right heirs of Margaret M’Kelvey-
As from the report of the case, it appears that many points were urged, and insisted on, at the trial, which may not now be considered proper or relevant; and as the jury may have been, in some degree, diverted from the true points which ought to have engaged their attention, and influenced by considerations which ought not to have weighed w.ith them, in the verdict which they have given, I shall take this opportunity to premise what I conceive to be a safe and convenient rule, and one which ought to be applied on the present occasion, namely : That in all cases where a new trial is moved for, if it shall clearly appear that the evidence given at the trial, if properly admitted, was legally sufficient to authorize the verdict, and upon the whole, that justice has been substantially done, the verdict ought not to be set aside, notwithstanding there may have been some evidence given, which was not materially or properly applicable, or relevanc to the case ; and although there may be reason to presume that the jury may have been influenced in some degree by such immaterial or irrelevant evidence. 5 Burr. 2631. Prior to the determination of the case of Jones v. Smith, decided in Charleston, and a subsequent decision in the case of Mazyck v. Wight, my opinion, upon an important point, which is embraced in this case, was very different from that which I now think it is my duty to hold. A majority of my brethren have established, by the decision in the latter case, a principle to which I was opposed; and the rule which is said to be fixed by the former case, is contrary to what I have ever considered legally correct and safe. It may, however, be indiscreet, to found any decisive opinion on the authority of the case of Jones v. Smith, as, I believe, it has not yet been clearly ascertained and settled, what the precise rule was, which was intended to be laid down by the majority of the judges who decided that case, as applicable to cases in general, relative to the event to the title of lands hy possession, under the act of limitations ; nor do I know that it has ever yet been determined, that mere naked possession, without any ostensible title, or color, or semblance of title, is such a possession of land, as the act of limitations can operate upon, and sanction, and establish, as a sufficient legal title, in opposition to the title, or claim, of the true and rightful proprietor. But the decision in the case of Mazyck v. Wight, has clearly established a ¿principle, which I am not now at liberty to deny, or con- *167 tro vert, and which principle certainly applies, although I think it ought not to govern in this case. In that case the question was, whether a purchaser of land, under an irregular, or invalid grant, can maintain his title, under the act of limitations, by proving that those, from whom he has derived his title, had possession of the land for a part of the time required, to bar any adverse claimant, and that he, succeeding to thoir possession, continued the same for the remainder of the term. The doctrine established by the opinion of my brethren is, that he who would take advantage of the act of limitations to support his title, must prove thafeither he himself, or some person from whom he derives his title, had such possession of the land, as under the act of limitations is necessary to quiet the title'of the tenant in possession, for the whole time prescribed by the act, without any transfer, or mutation of possession whatsoever. The principle upon which this doctrine is founded, is, that every one who has possession of land, by a defective or insufficient title, is to be regarded as a wrongdoer, and trespasser, whether such title should appear to have «been obtained by fraud, or collusion ; by violence, or fairly by purchase, or by descent, and without any knowledge of an adverse title ; and that such trespasser, unless he shall have had a continued possession himself, claiming in his own right for the space of five years, will acquire no right, or title, which shall be capable of being transferred: aud, therefore, that detached or divided portions of the term of five years, during which the possession has been holden by-different persons, cannot be coupled or connected together, to satisfy the true intention of the act of limitations, notwithstanding those several possessions may have been under concurrent titles, which no way conflicted regularly, and fairly deduced from the same source. Upon this principle, it was holden, that if he who is in possession, but has not the best title, shall discontinue the possession for a time, before the expiration of five years, whether he shall leave the possession vacant, or transfer the possession and title to another by deed, and the person to whom the same shall be transferred, shall immediately succeed to the possession, and continue it, such incomplete or broken possession, shall have no effect or avail against any one who shall have a lawful or better title. But if any occupant of land, whether claiming under an apparently good title, or otherwise, whether a bona fide purchaser, for a valuable consideration, or one who has , basely and fraudulently gained possession, under a merely colorable title ; or achieved the possession by violence and outrage, without even a semblance of title, or pretence of legal right, shall have *168 cont'nued ¡n the actual possession, unmolested by a judicial claim? for five entire years, his wrongful possession, at the expiration of that period, shall instantaneously, by the arbitrary operation of the' act limitations, by a sort of hocus pocus, not easily reconcileable with the rules of law, or the dictates of reason, or sound policy,, change its character, and from a tortious possession, which cannot serve for the foundation of any right, become a good and lawful possession, and a perfect title, and sufficient by itself, without the aid of any grant, conveyance, or any other written document. The opinion I entertained, and upon which I uniformly acted, prior to the adjudication of the case of Mazyck v. Wight, proceeded on a principle diametrically opposite to that which I have stated, as the principle on which my brethren have founded their opinion. From the fullest investigation my means and opportunities allowed me to make, and the bést lights I possess, and after mature reflection on the subject, the resdlt was a perfect conviction of mind, that the act of limitation was never intended to operate in favor of a wrongful possession, without a color or semblance of title, and that it ought not to receive a construction which would give it that effect. I was led to this conclusion, not only by perusing the act itself, and considering its apparent design, and the policy of it, but by keeping steadily in view the general principles of law, and rules of construction. It seemed to me to be outraging the first principles of jurisprudence, to admit the principle, that a wrongful act may be made the basis of a legal claim. That a wrong may be converted into a right, by mere length of time, exploding the idea of a presumptive right. The preamble of the act, which may be used as a key for the construction of it, seemed to me to hold up for its principal object, “ the quieting of disputes between persons having estates in land;” and, I thought, it could not be intended to provide a sanction for mere occupants, who might obtain the lawless possession of ungranted land, or invade the land granted to others, without any pretence óf legal right. I could find no words.in the act, which, in my judgment, necessitated a construction so contrary to the principles of law, and so revolting to the plainest notions of equity. ■ I was unable to discover any beneficial effects which, on the ground of policy, were calculated to flow from the adoption of such a rule of property. I thought it would be more correct to expound the act upon the principle of presuming a legal and sufficient title in favor of the claimant in possession. The policy and design of the act appeared to me to be, to avoid the pernicious con. sequences of litigation, between persons holding and claiming titles *169 to land, under grants, or other written evidences of title, many of them imperfect and invalid, but fairly obtained and accompanied by possession, where the controversies depending on such evidences of title might be delayed for a great length of time, either through cover, or negligence, to the great inconvenience, and perhaps utter ruin of the claimant in possession; and also to hold out an encourage, ment to settlers, who might be apprehensive of an adverse title, or doubtful of the sufficiency of their own, and be thereby discouraged from settling on, and improving their lands. In this view, it appeared to me, the legislature had no intention to create any new right, or establish any new principle, inconsistent with the general and well settled doctrines of law, to serve the purpose of securing occupants of land in the lawful and Iona fide possession of them, after allowing- a reasonable time for adverse claimants out of possession, to come forward and dispute the right of reversion, in order that the titles upon which the parties found their claims, might be examined and judicially decided. But the object I conceived, was to limit and restrain the right of the party out of possession, from the exercise or benefit of that right, after the lapse of a certain number of years, in order to protect the party in possession, under an adverse title, such a title as would be sufficient to enable him to recover in ejectment against a wrongful possessor, or mere occupant, and forever quiet his claim. It appeared to me that this principle of construction was warranted by the doctrine both of the civil and common law, as well as by the dictates of reason and natural justice. The law of prescription, from lapse of time, is founded on the presumption of right, not on the acknowledgment and vindication of wrong. The limitation of time does not extinguish or confer a right, but only prevents the party, having a right, from taking the benefit of it; and operates on the presumption of a superior right, in the actual occupant, or the presumed abandonment, or surrender of the right so limited or restrained. My opinion was, that mere naked occupancy, for any number of years, without pre-tence of lawful title, would not be such a possession of land as the limitation act was intended to favor and protect; but that it must be such a title by grant, or deed, as would be sufficient, putting the act of limitations out of the case, to enable the party claiming, to recover the land, in an action against a trespasser, or any mere occupant. It did- not appear to me, that the establishment of this rule would be attended with that danger, and all those mischiefs which some of my brethren seemed to apprehend. The possession of part under this rule, would indeed be a legal or constructive possession *170 0f the whole land comprehended in the title ; and the party would be entitled to be quieted, or secured, according . to his title ; but the-possession, thus favored, would not be a secret or fraudulent possession, but notorious, adverse, and hona fide. If the true owner should have full notice of an adverse possession, under an apparently fair and valid legal title, although that possession should happen to be of a very small part of a large tract of land, yet I could see no reason, on principle, why he should not be barred by the operation of the act from recovering one part as much as another of it. The law favors the vigilant, and not the supine and inattentive. “ Certainty,” to use the expression of Lord Coke, “ is the mother of quietness and repose.” I did conceive that this rule, which would have been at least a certain one, which would operate uniformly in all cases, would not be liable to vary according to circumstances, and vibrate with the arbitrary, and whether wise or not, tyranical discretion of courts and juries ; would have been productive, in general, of the most salutary and beneficial consequences ; as it would have removed all doubt and uncertainty, and thereby have avoided much confusion and litigation; for it is better that individuals should be exposed to suffer, in a few instances, great inconvenience, and even distress, than that a general mischief should be allowed to prevail. An uncertain or undefined rule of right is a great mischief, Nothing should be left to the discretion of courts and juries, that is capable of being defined and subjected to certain and known rules of law. It appeared to me preposterous that an intruder and. trespasser should derive a benefit from his own wrong, and be entitled to the support and protection of the law against a fair and honest grantee, or purchaser. In the case of a possession claimed and held under a title' apparently legal and sufficient, the evidence of the title contains the evidence of the extent of the possession ; for possession, according to the doctrine I held, must be co-extensive with the title, under which it is holden. But according to the principle which has been fixed, there is no certain rule which can be laid down for determining the extent of possession, unless it should be decided that no other kind of possession should be regarded, than the actual tillage, or other notorious and unequivocal use of the land, continually, throughout the year, and from year to year, during the whole period of time required to form a bar to every other claimant. To this opinion I rather incline ; but I do not think there is any necessity in the present case to deliver my opinion upon that point. It is natural, that an opinion which has been long entertained, and believed to be correct, *171 ■should be adhered'to with more than ordinary pertinacity. I was strongly persuaded that no principle of law or equity could, with propriety, be brought to bear in favor of a naked or tortious possession, or one gained by fraud or circumvention ; but in favor of a fair bona fide possession, under the sanction of an apparently legal and valid fight of possession by grant, or deed, many cogent reasons and arguments might be fairly urged. Such a possession may be very honestly gained, under a full belief of the validity of the title by which the land is transferred, and without any knowledge or notice of a conflicting claim. The transfer or conveyance of title, may have been an honest transaction ; the possession may have been continued for a series of years, during which time great and expensive improvements may have been made ; and yet the person having a belter title, may have known all this, and with a dishonest and ungenerous intention to profit by the mistake of the purchaser in possession, lain by quietly and secretly, all the time; and at last may bring an action to take away not only the land, but all the improvements. The law ever presumes in favor of possession, for possession alone is prima facie evidence of a good title. Even in the case of a wrongful possession, without even a semblance of title, the evidence of possession alone, is sufficient against all others who have not a legal title. Eut whenever the claimant shews a legal title, the evidence of possession alone, unsupported by any written document, ought not to prevail. The presumption of a good title is rebutted wr and ■ other evidence than mere possession, becomes necessary. But if the party in possession, can adduce a fair written title, free from fraud, and which would be deemed a sufficient title against a trespasser having no color of title, and should be able to prove an open, notorious, and adverse possession, in virtue of such title, for the space of time required by the limitation act to operate a bar to the claim of the claimant out of posses, sion, without any interruption by suit at law, I have thought it a correct principle to admit the presumption of the superior justice, and legal right of the party in possession. I have thought it consonant with legal principles to presume in his favor, on the strength of his possession for the time prescribed by law, that his title had a rightful origin, and that it was either originally superior to the title of the adversary claimant, or that the latter had yielded up the advantage of his better title, and had consented to the possession of his opponent, and waived all right of action for the recovery of the possession from him. This doctrine agrees with the doctrines of the civil law, and common law of England. Domat, B. iii. Tit. *172 7, sec. 4. 2 Pothier on Obligations, 144. 2 Just. 118. 1 Vern. 106. 12 Co. 4. 1 Bl. Com. 472. Cowp. 102. 2 Will. Saund. 175, a. d. 6 East. 214. Run. on Ejeclm.
^11 ^le case Mazyck v. Wight, my opinion was in conformity with the doctrine I have just endeavored to explain. I saw no convincing reason for distinguishing between a case where the party in possession has had five years constant possession by himself, or his servants, and one where the possession has been fairly and legally transferred, and where it has been continued and held under a transfer of the same right and title. In that case the party in possession held under a conveyance from a junior grantee; and it is possible the grant might have issued by mistake, and not through any fraud of the grantee, so as to comprehend land before granted. I thought the party in possession was entitled to connect the possession of the grantee under whom he claimed, with his own possession, and to avail himself of both, under the limitation act, to support his title. All my brethren, however, thought differently; and it is now an established principle of law, that mere occupancy, without even a shadow of title, may, by lapse of time, be transmuted into a valid legal title. But no such title can be acquired against the State, of lands never granted. This was determined by a full bench, sometime ago at Columbia, in the case of Owen v. Lucas. (1 vol. p. 519.)
With regard to the extent of possession, I have already suggested the inclination of my opinion, but I have also said, that it does not appear necessary to declare any opinion on that point, on the present occasion ; for the present case, in my judgment, does not depend on any construction of the act of limitations, but upon the evidence of an unquestionable legal title by deed, to the whole of the land in dispute. The long possession of Mrs. M’Kelvey, undisturbed by any sort of adverse claim; the deed of marriage settlement, almost coeval with her possession; the descent to her heir ; the peaceable possession of the heir ; and an act of assembly .disposing of the land as escheated property, subject to the claim of the true owner, if any such should appear; all these circumstances combined, furnish presumptive evidence equivalent to full and absolute proof of a good and sufficient legal conveyance from Beard, the grantee, to Mrs. M’Kelvey. Lord Coke, commenting on the statute of Marlbridge, 2 Just. 118, says, “ The law doth ever favor possession as an argument of right, and doth incline rather to long possession, without shewing any deed, than to an ancient deed without possession.” Every thing ought to be presumed in sup *173 port of a claim founded on long continued possession ; especially where there is no reason to believe a better title exists. The doctrine of presumption, in favor of possession, is warranted by numerous authorities. Livery and seisin has been presumed to support a possession under a deed ; 1 Vern. 196 ; so that a vicarage was lawfully endowed. 12 Co. 4. That there was an ancient grant, made by one who had a power to make it. lb. That there was a charter from the crown, to authorize the exercise of a franchise beyond the time of legal mémory; 1 Bl. Com. 472 ; and even within the time of legal memory, to authorize the possession of •duties for a great length of time. Nay, Lord Coke goes even so far as to say, that an act of Parliament may be presumed in favor of long possession. Co. Litt. Cowp. 214, 215. 4 D. and E. 682. 2 Bl. Rep. 1228. Upon this ground, I think the verdict which was rendered in the present case was well warranted by the evidence. If the deed of marriage settlement had conveyed the estate to the trustee and his heirs, the legal estate would have passed out of Mrs. M’Kelvey, and her heirs, subject to the trusts contained in the deed ; but the word “ heirs” having been omitted, the trustee could take only an estate for life, and'lhe fee simple never passed out of Mrs. M’Kelvey, and at her death it descended to her heir. As her heir, Daniel M’Kelvey, died without issue, and intestate; by the law, as it then stood, the estate descended to his heir ex parte materna, and not to his heir by the father’s side : for no one who was no^ of the blood of the proprietor, who acquired the land, could succeed to the inheritance. If the evidence was sufficient to authorize the presumption of a good title in Margaret M’Kelvey, there can be no question but that that title must be for the whole land granted to Beard. In fine, my opinion is, that the verdict is supported by the evidence given at the trial, and that it ought not to be ' set aside.
[See 1 vol. 326, where, in. the same case, the principle was decided, that a joint «right cannot be barred by the limitation act, if any of the persons connected in the right are entitled to the benefit of any of the exceptions in the saving clause of the act, — Waties, Johnson, Teeze-vant, and Beevaed, Js., being all present, and agreeing in this opinion. See also, 2 vol. 35, where the same parties are again before the court, on the question of payment of costs on the continuance of the trial at the request of the defendant.]
Note. See 1 Caines, N. Y. T. R. 84. Vandyck v. Van Burén and Vosburg. Where a conveyance might have been claimed, and possession of the loci in yu^us 2one with the right to claim a deed, for fifty years, a deed wasjpre-sumed, possession according to the nature and situation- of the land. Forty yeals so^e P0ssessi011 of a tenant in common, ouster presumed. A deed, under such circumstances, (per car.) is justly, if not necessarily, to be presumed, and considerations of public convenience, and sound policy, where the possession is ancient, and continued by color and claim of right, requires it. The possession was such as the subject was susceptible of. 3 D. and E. 155. 1 Caines, 190, in a note. Truesdale v. Jefferies. The possession of a squatter, one who enters without claiming title, and who relie3 on possession solely, is of no avail. 1 Caines, 358. An adverse pedis possessio, fo.r twenty years, with a claim of title in other lands, in right of that pedis possessio, which lands are part of the lot on which the pedis possessio is taken, is a bar to a recovery in ejectment. Jackson ex dem. Tutnam, et. al, v. Bowen. 2 Caines, 382. After fourteen years possession under conveyances from a lessor, who had a right to enter in default of payment, a demand and re-entry will be presumed. See 1J ohnson’s N. Y. R. 150. Brandte®. dem. Watson v. Ogden. Per cur. To bar the recovery of a plaintiff who has a title, by a possession in the defendant, it is necessary that it should appear that the defendant, or the person from whom he derives his title, entered with a claim of title ; that such claim was hostile to the real owner; that such hostility existed, on the part of the succeeding tenants; that there has been a continuity of possession; and that such possession should be marked by definite boundaries. 1 Johns. 168. The statute of limitations takes away the remedy-only. 2 Johns. 121. It gives no right, or freehold of inheritance, to a party in possession. It merely deprives the owner, who has been so long out of possession, of his action to recover it. It has the effect of a title. It divests the owner out of possession. But a bare acknowledgment of the right of the owner will prevent the operation of the statute. See 2 Johns. 22. Jackson v, Hazen. Plaintiff claimed as against a_ trespasser. It was proved plaintiff had posséssion, and that defendant took possession without any color of right from any person. For plaintiff, it was contended, that possession was prima facie evidence of a legal title. Bl. Com. 191,196. Good against all but rightful owner. 3 Burr. 1563. Ejectment a proceeding in rem. Rummingt. 8. 3 Wils. 120. 3 BI. Com. 200. Presumption of right in favor of plaintiff. Cro. Eliz. 437. Bull. 103. Esp. Dig. 432. Per curiam. The plaintiff relies on mere possessory title, which he has proved. He was in possession within three years. This is suff}-cient.evidence of title against a trespasser. A party cannot derive a right from his own unlawful act. See 2 Johns. 220. A possession fence by trees felled and lapped, was not considered an adverse possession to take away a right, not an actual occupancy — apossessio pedis — too loose and equivocal.